1 | ROBERT A. HESSLING (State Bar No. 096466)
   *rhessling@gmail.com*
2 | MATTHEW F. KENNEDY (State Bar No. 199485)
   *matthewfkenn@gmail.com*
3 | ROBERT A. HESSLING, APC
   3853 Meadow Park Lane
4 | Torrance, California 90505
   Telephone:   (310) 375-0255
5 | Facsimile:   (310) 373-5152

6 | General Counsel for Heide Kurtz,
   Chapter 7 Trustee
7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 | In re                                      ) Case No. 2:22-bk-11051-VZ
                                               )
12 | ASSISTED LIVING AMERICA V, LLC,            ) Chapter 7
                                               )
13 | Debtor.                                    ) **MOTION OF TRUSTEE FOR ORDER**
                                               ) **APPROVING SETTLEMENT WITH**
14 |                                            ) **1022 S. LA CIENEGA MANAGER, LLC;**
                                               ) **MEMORANDUM OF POINTS AND**
15 |                                            ) **AUTHORITIES; DECLARATION OF**
                                               ) **HEIDE KURTZ; AND REQUEST FOR**
16 |                                            ) **JUDICIAL NOTICE**
                                               )
17 |                                            ) [No Hearing Required unless Requested]
                                               )
18 | ──────────────────────────────────────────

19 | Heide Kurtz, the Chapter 7 Trustee of the estate of Assisted Living America V, LLC

20 | ("Debtor"), moves the Court, pursuant to Fed.R.Bankr.P. 9019 and Local Bankruptcy

21 | Rule 9013-1(o), for an order approving a proposed settlement with 1022 S. La Cienega Manaqer,

22 | LLC, in accordance with the terms of a proposed Settlement Agreement and Mutual Release.

23 | This Motion is made on the grounds that the settlement should be approved because it was

24 | negotiated in good faith, is fair and equitable, and is in the best interests of the estate and the

25 | creditors.

26 | This Motion is based upon the Notice of Motion, this Motion and the accompanying

27 | Memorandum of Points and Authorities, Declaration of Heide Kurtz, and Request for Judicial

28 | Notice, the papers and pleadings in this case, *1022 S. La Cienega Manager, LLC v. Aida Renta-*

1

*Calib, et al.*, Los Angeles County Superior Court Case No. 21STCV30834, *Isaacson v. 1022 S. La Cienega Manager, LLC, et al.*, Los Angeles County Superior Court Case No. 22STCV06684, and *Isaacson v. 1022 S. La Cienega Manager, LLC, et al.*, Los Angeles County Superior Court Case No. 2STCV06896, and such other evidence that may be presented to the Court.

Dated: January 3, 2023                    ROBERT A. HESSLING, APC

By:    ROBERT A. HESSLING
       General Counsel for Heide Kurtz,
       Chapter 7 Trustee

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.

INTRODUCTION

Heide Kurtz, the Chapter 7 Trustee of the estate of Assisted Living America V, LLC ("Debtor"), seeks an order approving a proposed settlement with 1022 S. La Cienega Manager, LLC ("Successor Manager"), in accordance with the terms of a proposed Settlement Agreement and Mutual Release ("Agreement"). The facts underlying this motion, the proposed settlement, and the nature of the relief sought are that between 2004 and 2007, Beverly Hills Adjacent Senior Assisted Living, LLC ("BHASAL"), and SRC/SCH, LLC ("SRC/SCH"), which were California limited liability corporations, purchased over 52,000 square feet of land commonly described as 1022 to 1026, 1032, and 1042 to 1054 South La Cienega Blvd., Los Angeles, California ("Property"). These companies obtained zoning entitlements and approvals from the City of Los Angeles to construct a five-story assisted living facility on the Property.

In March 2013, BHASAL and SRC/SCH merged, and the Debtor became the successor as a result of the merger. By a grant deed recorded on July 22, 2013, the Debtor, as the successor by the merger, conveyed the right, title and interest in the Property to the Debtor.

The Debtor's initial manager Charles Weber resigned on August 6, 2013. In or about mid-2014, D.I.D.M. Development Corporation ("D.I.D.M.") became the successor manager of the Debtor.

In or about November 2020, the Successor Manager replaced D.I.D.M. as the Debtor's manager. The terms of the Successor Manager's retention are set forth in a letter agreement dated November 23, 2020. The letter agreement provides, among other things, that the Debtor will indemnify the Successor Manager and others from any and all claims, liabilities, losses, damages, debts, judgments, and/or expenses and actions in respect thereof related to or arising out of or in connection with Successor Manager's services under the agreement.

In or about November 2020, the Successor Manager opened two bank accounts at City National Bank – Account No. xxxxxx4132 for the Debtor ("Debtor Account) and Account No. xxxxx0356 for the Successor Manager ("Successor Manager Account").

In mid-July 2021, the Property was sold, and proceeds of $2,055,291.36 were received and were deposited into the Successor Manager Account in connection with the closing of the sale of the Property.

On August 13, 2021, the Successor Manager paid $1,250,290.36 of the proceeds to the Debtor, which deposited the funds in the Debtor Account.

The Successor Manager paid the following amounts to the following business entities on the following dates from the Successor Manager Account:

| Date | Business Entity | Payment |
|------|-----------------|---------|
| 11/13/21 | Greenberg Traurig, LLP | $70,540.70 |
| 1/18/22 | Successor Manager | $77,202.92 |
| 1/20/22 | Greenberg Traurig, LLP | $35,954.40 |

On February 24, 2022, the Debtor paid the sum of $181,852.46 to the Successor Manager. On the same day, the Debtor deposited the sum of $100,000 into the Successor Manager Account ("$100,000 Deposit"). The Debtor's Schedule "A/B" indicates that it was a "Deposit paid to 1022 S. La Cienega Manager, LLC in connection with potential indemnification claims of 1022 S. La Cienega Manager, LLC and its affiliates."

The following lawsuits involving the Successor Manager were commenced in the Los Angeles County Superior Court by the following persons or entities before the date of the filing of the Debtor's petition and are pending:

1.      Successor Manager – On August 19, 2021, the Successor Manager filed a lawsuit against the Debtor's members and other defendants, being *1022 S. La Cienega Manager, LLC v. Aida Renta-Calib, et al.*, Case No. 21STCV30834, seeking, among other relief, the judicial dissolution of the Debtor ("Judicial Dissolution Action").

2.      Webb Trust – On January 7, 2022, the Webb Trust, by and through its trust trustee Craig Webb, filed a cross-complaint against the Debtor, the Successor Manager, and others in the Judicial Dissolution Action, alleging causes of action for breach of contract, accounting, money had and received, negligence, negligent misrepresentation, concealment, and unjust

///

enrichment and seeking compensatory damages in excess of $4,000,000, punitive damages, attorneys' fees, and costs.

3.     Dean R. Isaacson ("Isaacson") – On February 23, 2022, Isaacson filed two lawsuits against the Debtor, the Successor Manager, and Assisted Living America, LLC:

a.     *Isaacson v. 1022 S. La Cienega Manager, LLC, et al.*, Case No. 22STCV06684 – Isaacson, as a member of the Debtor, alleged causes of action for breach of fiduciary duty and breach of the covenant of good faith and fair dealing relative to the Successor Manager's services as the Debtor's manager and alleged damages in an amount according to proof.

b.     *Isaacson v. 1022 S. La Cienega Manager, LLC, et al.*, Case No. 2STCV06896 – Isaacson alleged causes of action for breach of contract, negligence, negligent misrepresentation, and intentional concealment and alleged damages for the nonpayment of a $600,000 loan that he had made to the Debtor.

On February 25, 2022, the Debtor filed a voluntary Chapter 7 petition. Heide Kurtz was appointed as the Chapter 7 Trustee.

The Trustee contends, among other things, that: (1) the $100,000 Deposit is avoidable and recoverable as a preferential transfer under 11 U.S.C. U.S.C. § 547(b); and (2) the $181,853.24 payment is avoidable and recoverable as a preferential transfer under section 547(b). The $100,000 Deposit and the payment of $181,853.24 are hereinafter collectively referred to as the "Transfers."

The Successor Manager disputes the Trustee's contentions. It contends, among other things, that the Transfers: (1) were used to satisfy professional fees and expenses (listed in the table above), which were incurred by the Debtor months prior to bankruptcy filing and were paid in the ordinary course of business; and (2) are not avoidable and recoverable under the Bankruptcy Code and California law.

On July 11, 2022, the Successor Manager filed a proof of secured claim, being Claim No. 23, in an unknown amount ("Claim No. 23") based on potential indemnification claims of the Successor Manager against the Debtor's estate.

The Successor Manager contends, among other things, that Claim No. 23 is secured by the $100,000 Deposit and that the Successor Manager is entitled to a setoff. The Trustee disputes the

Successor Manager's contentions and Claim No. 23 and contends, among other things, that the Successor Manager is not entitled to any setoff and that Claim No. 23 should not be allowed as a secured claim because the $100,000 Deposit is avoidable and recoverable as a preferential transfer.

The Trustee and the Successor Manager propose to settle all claims and causes of action relating to the Transfers, Claim No. 23 and any potential indemnification claims, the Successor Manager's services as the Debtor's manager, and the Trustee's administration of the estate in accordance with the terms of the Agreement. In the Agreement, the Trustee and the Successor Manager have agreed, among other things and subject to Bankruptcy Court approval, as follows:

1.      Within 10 days after the entry of a final order approving the settlement, the Successor Manager shall pay the sum of $100,000 to the Trustee.

2.      Within 10 days after the entry of a final order approving the settlement, the Successor Manager shall withdraw its Claim No. 23 by causing to be filed in the Debtor's case the Withdrawal of Claim No. 23 in the form of the Exhibit "1" attached to the Agreement.

3.      The Agreement is effective only upon the entry of a final order approving the compromise and settlement in the Agreement, following the expiration of 14 days without any appeal or other challenge to the order, or final judgment following any appeal or other challenge.

4.      In the event that the Bankruptcy Court approves the settlement but the settlement order is appealed: (a) the statute of limitations under 11 U.S.C. § 546(a) regarding the actions stated therein shall be tolled during the period of any appeal; and (b) the Successor Manager waives the defense of any statute of limitations under section 546(a) regarding such actions for those tolled periods.

5.      Except with respect to the rights and obligations under the Agreement, including without limitation the $100,000 payment and the withdrawal of Claim No. 23, the Trustee, on behalf of the Debtor's estate, releases any and all claims and causes of action, both known and unknown, against the Successor Manager, its manager Stapleton Group, officers, members, attorneys, agents, and employees relating to the Transfers, Claim No. 23 and any potential indemnification claims, and the Successor Manager's services as the Debtor's manager.

6

6.      Except with respect to the rights and obligations under the Agreement, the Successor Manager releases any and all claims and causes of action, both known and unknown, against the Trustee, in her personal capacity and capacity as the Chapter 7 Trustee, her attorneys, agents, and professionals, and the Debtor's estate relating to the Transfers, Claim No. 23 and any potential indemnification claims, and the Trustee's administration of the Debtor's estate.

The proposed settlement should be approved. First, it was negotiated in good faith because the parties were represented by counsel, the negotiations were at arms-length, and the settlement resolves a dispute between the Trustee and the Successor Manager regarding the Transfers, Claim No. 23 and any potential indemnification claims, the Successor Manager's services as the Debtor's manager, and the Trustee's administration of the estate.

Second, as more fully discussed below, the consideration of the factors in *In re A & C Properties*, 784 F.2d at 1377, 1380-1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986) establishes that the proposed settlement is fair and equitable and is in the best interests of the estate and the creditors.

## II.

## STATEMENT OF FACTS

The facts underlying the proposed settlement are set forth in the preceding Introduction. For the sake of brevity, these facts are not reiterated, and are incorporated herein by this reference.

## III.

## ARGUMENTS

### The Proposed Settlement Should Be Approved Because It Was Negotiated in Good Faith, Is Fair and Equitable, and is in the Best Interests of the Estate and the Creditors.

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides that on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Local Bankruptcy Rule 9013-1 authorizes orders to be obtained on various motions without a hearing. These motions include a motion pursuant to Fed.R.Bankr.P. 9019 to approve a compromise.

The approval or rejection of a proposed compromise is within the sound discretion of the court and is to be determined by the particular circumstances of each case. *In re Walsh*

1  *Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982).  The trustee, as the party proposing the

2  compromise, has the burden of persuading the bankruptcy court that the compromise is fair and

3  equitable and should be approved. *In re A & C Properties*, 784 F.2d at 1380-1381 (citing *In re*

4  *Hallet*, 33 B.R. 564, 565-66 (Bankr.D.Me.1983)).

5        The United States Supreme Court has established standards for bankruptcy courts to assess

6  settlements of controversies. *See Protective Committee for Independent Stock Holders of TMT*

7  *Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). Under the *TMT*

8  *Trailer Ferry* standards, a court analyzing a settlement should apprise itself of all facts necessary

9  for an intelligent and objective opinion of the probabilities of ultimate success should the claim be

10  litigated. *Id*. at 424. The court should form an educated estimate of: (a) the complexity, expense

11  and likely duration of such litigation; (b) the possible difficulties of collecting on any judgment that

12  may be obtained; and (c) all other factors relevant to a full and fair assessment of the wisdom of the

13  proposed compromise. *Id*. Basic to this process in every instance is the need to compare the terms

14  of the compromise with the likely rewards of litigation. *Id*. at 424-25.

15        The Ninth Circuit has reiterated that in determining the fairness, reasonableness and

16  adequacy of a proposed settlement agreement, the court must consider: (a) the probability of

17  success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c)

18  (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily

19  attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable

20  views in the premises. *Martin v. Kane (In re A&C Properties)*,   784 F.2d 1377, 1381 (9th Cir.

21  1986), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122

22  (1986).

23        "Each factor need not be treated in a vacuum; rather, the factors should be considered as a

24  whole to determine whether the settlement compares favorably with the expected rewards of

25  litigation." *In re Western Funding Inc.*, 550 B.R. 841, 851 (9th Cir. BAP 2016). The Court need not

26  conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims

27  sought to be compromised. *In re Walsh Construction, Inc.*, 669 F.2d at 1328. In fact, the Court

28  need not decide the questions of law and fact raised in the controversies sought to be settled, and

1  need not determine whether the settlement presented is the best one that could possibly have been

2  achieved.  Instead, the Court's responsibility is only to "canvass the issues to see 'whether the

3  settlement falls below the lowest point in the zone of reasonableness.'" *Cosoff v. Rodman (In re*

4  *W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) (quoting

5  *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)).

6          The purpose of a compromise agreement is to allow the trustee and the creditors to avoid

7  the expenses and burdens associated with litigating sharply contested and dubious claims. *In re*

8  *Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982), *citing In re California Associated*

9  *Products*, 183 F.2d 946, 949-50 (9th Cir. 1950). Compromises are favored in bankruptcy, and the

10  decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in

11  the sound discretion of the bankruptcy judge. *In re Sassalos*, 160 B.R. 646, 653 (D. Ore. 1993); *In*

12  *re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (recognizing that the law favors compromise and not

13  litigation for its own sake).

14          The proposed settlement should be approved. First, it was negotiated in good faith because

15  the parties were represented by counsel, the negotiations were at arms-length, and the settlement

16  resolves a dispute between the Trustee and the Successor Manager regarding the Transfers, Claim

17  No. 23 and any potential indemnification claims, the Successor Manager's services as the Debtor's

18  manager, and the Trustee's administration of the estate.

19          Second, as more fully discussed below, the consideration of the factors in *In re A & C*

20  *Properties* establishes that the proposed settlement is fair and equitable and is in the best interests

21  of the estate and the creditors.

22          1.      Probability of Success on the Merits

23          The proposed settlement is fair and equitable and is in the best interests of the estate

24  and the creditors. Although the Trustee contends, among other things, that the Transfers are

25  avoidable and recoverable as preferential transfers under section 547(b), the Successor Manager

26  disputes the Trustee's contentions. It contends, among other things, that the Transfers: (a) were

27  used to satisfy professional fees and expenses, which were incurred by the Debtor months prior to

28  bankruptcy filing and were paid in the ordinary course of business; and (b) are not avoidable and

recoverable under the Bankruptcy Code and California law. The prospects of avoiding and recovering the Transfers are uncertain. Also, although the Successor Manager contends, among other things, that Claim No. 23 is secured by the $100,000 Deposit and that the Successor Manager is entitled to a setoff, the Trustee disputes the Successor Manager's contentions and Claim No. 23. She contends, among other things, that the Successor Manager is not entitled to any setoff and that Claim No. 23 should not be allowed as a secured claim because the $100,000 Deposit is avoidable and recoverable as a preferential transfer. The prospect of disallowing the security for Claim No. 23 is uncertain. The settlement resolves the disputes regarding Claim No. 23 and the Transfers and avoids the concomitant expenses, delay, and litigation to resolve the disputes. In addition, it results in the payment of $100,000 to the estate and the withdrawal of Claim No. 23. Also, the withdrawal of Claim No. 23 will enable the Trustee to proceed toward closing this case, and the holders of allowed unsecured claims to receive distributions, rather than having to wait until the Superior Court litigation involving the Successor Manager is resolved.

        2.      Difficulty, If Any, in Collection

        The Trustee believes that collection is not at issue because she believes that the Successor Manager has sufficient financial wherewithal to make the settlement payment of $100,000.

        3.      Complexity, Expense and Inconvenience of Litigation

        The litigation to resolve the disputes would likely be costly and time-consuming, and the estate would be required to bear the expenses of such litigation.

        4.      Paramount Interests of Creditors

        In the Trustee's business judgment, the settlement is in the best interests of the estate and the creditors. The settlement resolves the disputes and avoids the concomitant expenses, delay, and litigation to resolve the disputes. In addition, it results in the payment of $100,000 to the estate and the withdrawal of Claim No. 23. Also, the withdrawal of Claim No. 23 will enable the Trustee to proceed toward closing this case, and the holders of allowed unsecured claims to receive distributions, rather than having to wait until the Superior Court litigation involving the Successor Manager is resolved.

IV.

CONCLUSION

Based upon the above reasons, the Trustee respectfully requests that the Court enter an order approving the proposed settlement with the Successor Manager in accordance with the terms of the Agreement and granting such other and further relief that may be just and proper.

Dated: January 3, 2023

ROBERT A. HESSLING, APC

By: _____

ROBERT A. HESSLING
General Counsel for Heide Kurtz,
Chapter 7 Trustee

# DECLARATION OF HEIDE KURTZ

## DECLARATION OF HEIDE KURTZ

I, Heide Kurtz, declare as follows:

1.     I am the Chapter 7 Trustee of the estate of Assisted Living America V, LLC ("Debtor").

2.     I have personal knowledge of the facts in this declaration, except as to those matters that are based upon information and belief, which matters I believe to be true. If called as a witness, I could competently testify to all of these facts.

3.     I am informed and believe that between 2004 and 2007, Beverly Hills Adjacent Senior Assisted Living, LLC ("BHASAL") and SRC/SCH, LLC ("SRC/SCH") purchased over 52,000 square feet of land commonly described as 1022 to 1026, 1032, and 1042 to 1054 South La Cienega Blvd., Los Angeles, California ("Property").

4.     I am also informed and believe that these companies obtained zoning entitlements and approvals from the City of Los Angeles to construct a five-story assisted living facility on the Property.

5.     I am informed and believe that in March 2013, BHASAL and SRC/SCH merged and that the Debtor became the successor as a result of the merger.  By a grant deed recorded on July 22, 2013, the Debtor, as the successor by the merger, conveyed the right, title and interest in the Property to the Debtor. A true and correct copy of the grant deed is attached as Exhibit "2."

6.     I am informed and believe that the Debtor's initial manager Charles Weber resigned on August 6, 2013. I am also informed and believe that in or about mid-2014, D.I.D.M. Development Corporation ("D.I.D.M.") became the successor manager of the Debtor.

7.     I am informed and believe that in or about November 2020, the Successor Manager replaced D.I.D.M. as the Debtor's manager. The terms of the Successor Manager's retention are set forth in a letter agreement dated November 23, 2020. The letter agreement provides, among other things, that the Debtor will indemnify the Successor Manager and others from any and all claims, liabilities, losses, damages, debts, judgments, and/or expenses and actions in respect thereof related to or arising out of or in connection with Successor Manager's services under the agreement.

///

8.     I am informed and believe that in or about November 2020, the Successor Manager opened two bank accounts at City National Bank – Account No. xxxxx4132 for the Debtor ("Debtor Account) and Account No. xxxxx0356 for the Successor Manager ("Successor Manager Account").

9.     In mid-July 2021, the Property was sold, and proceeds of $2,055,291.36 were received and were deposited into the Successor Manager Account in connection with the closing of the sale of the Property.

10.     On August 13, 2021, the Successor Manager paid $1,250,290.36 of the proceeds to the Debtor, which deposited the funds in the Debtor Account.

11.     I am informed and believe that the Successor Manager paid the following amounts to the following business entities on the following dates from the Successor Manager Account:

| Date | Business Entity | Payment |
| --- | --- | --- |
| 11/13/21 | Greenberg Traurig, LLP | $70,540.70 |
| 1/18/22 | Successor Manager | $77,202.92 |
| 1/20/22 | Greenberg Traurig, LLP | $35,954.40 |

12.     I am informed and believe that on February 24, 2022, the Debtor paid the sum of $181,852.46 to the Successor Manager. I am also informed and believe that on the same day, the Debtor deposited the sum of $100,000 into the Successor Manager Account ("$100,000 Deposit"). The Debtor's Schedule "A/B" indicates that it was a "Deposit paid to 1022 S. La Cienega Manager, LLC in connection with potential indemnification claims of 1022 S. La Cienega Manager, LLC and its affiliates."

13.     The following lawsuits involving the Successor Manager were commenced in the Los Angeles County Superior Court by the following persons or entities before the date of the filing of the Debtor's petition and are pending:

a.     Successor Manager – On August 19, 2021, the Successor Manager filed a lawsuit against the Debtor's members and other defendants, being *1022 S. La Cienega Manager, LLC v. Aida Renta-Calib, et al.*, Case No. 21STCV30834, seeking, among other relief, the judicial dissolution of the Debtor ("Judicial Dissolution Action").

13

b.    Webb Trust – On January 7, 2022, the Webb Trust, by and through its trust trustee Craig Webb, filed a cross-complaint against the Debtor, the Successor Manager, and others in the Judicial Dissolution Action, alleging causes of action for breach of contract, accounting, money had and received, negligence, negligent misrepresentation, concealment, and unjust enrichment and seeking compensatory damages in excess of $4,000,000, punitive damages, attorneys' fees, and costs.

c.    Dean R. Isaacson ("Isaacson") – On February 23, 2022, Isaacson filed two lawsuits against the Debtor, the Successor Manager, and Assisted Living America, LLC:

(1)    *Isaacson v. 1022 S. La Cienega Manager, LLC, et al.*, Case No. 22STCV06684 – Isaacson, as a member of the Debtor, alleged causes of action for breach of fiduciary duty and breach of the covenant of good faith and fair dealing relative to the Successor Manager's services as the Debtor's manager and alleged damages in an amount according to proof.

(2)    *Isaacson v. 1022 S. La Cienega Manager, LLC, et al.*, Case No. 2STCV06896 – Isaacson alleged causes of action for breach of contract, negligence, negligent misrepresentation, and intentional concealment and alleged damages for the nonpayment of a $600,000 loan that he had made to the Debtor.

14.    On February 25, 2022, the Debtor filed a voluntary Chapter 7 petition. I was appointed as the Chapter 7 Trustee.

15.    I contend, among other things, that: (a) the $100,000 Deposit is avoidable and recoverable as a preferential transfer under 11 U.S.C. U.S.C. § 547(b); (a) the $181,853.24 payment is avoidable and recoverable as a preferential transfer under section 547(b). The $100,000 Deposit and the payment of $181,853.24 are hereinafter collectively referred to as the "Transfers."

16.    The Successor Manager disputes my contentions. It contends, among other things, that the Transfers: (a) were used to satisfy professional fees and expenses (listed in ¶ 11 above), which were incurred by the Debtor months prior to bankruptcy filing and were paid in the ordinary course of business; and (b) are not avoidable and recoverable under the Bankruptcy Code and California law.

///

14

17. On July 11, 2022, the Successor Manager filed a proof of secured claim, being Claim No. 23, in an unknown amount ("Claim No. 23") based on potential indemnification claims of the Successor Manager against the Debtor's estate.

18. The Successor Manager contends, among other things, that Claim No. 23 is secured by the $100,000 Deposit and that the Successor Manager is entitled to a setoff. I dispute the Successor Manager's contentions and Claim No. 23. I contend, among other things, that the Successor Manager is not entitled to any setoff and that Claim No. 23 should not be allowed as a secured claim because the $100,000 Deposit is avoidable and recoverable as a preferential transfer.

19. I propose to settle all claims and causes of action relating to the Transfers, Claim No. 23 and any potential indemnification claims, the Successor Manager's services as the Debtor's manager, and my administration of the estate in accordance with the terms of a Settlement Agreement and Mutual Release. A true and correct copy of the Agreement is attached as Exhibit "1," except that redactions were made regarding two bank account numbers. In the Agreement, the Successor Manager and I have agreed, among other things and subject to Bankruptcy Court approval, as follows:

a. Within 10 days after the entry of a final order approving the settlement, the Successor Manager shall pay the sum of $100,000 to me as Trustee.

b. Within 10 days after the entry of a final order approving the settlement, the Successor Manager shall withdraw its Claim No. 23 by causing to be filed in the Debtor's case the Withdrawal of Claim No. 23 in the form of the Exhibit "1" attached to the Agreement.

c. The Agreement is effective only upon the entry of a final order approving the compromise and settlement in the Agreement, following the expiration of 14 days without any appeal or other challenge to the order, or final judgment following any appeal or other challenge.

d. In the event that the Bankruptcy Court approves the settlement but the settlement order is appealed: (a) the statute of limitations under 11 U.S.C. § 546(a) regarding the actions stated therein shall be tolled during the period of any appeal; and (b) the Successor Manager waives the defense of any statute of limitations under section 546(a) regarding such actions for those tolled periods.

15

e.  Except with respect to the rights and obligations under the Agreement,
including without limitation the $100,000 payment and the withdrawal of Claim No. 23, I as
Trustee, on behalf of the Debtor's estate, releases any and all claims and causes of action, both
known and unknown, against the Successor Manager, its manager Stapleton Group, officers,
members, attorneys, agents, and employees relating to the Transfers, Claim No. 23 and any
potential indemnification claims, and the Successor Manager's services as the Debtor's manager.

f.  Except with respect to the rights and obligations under the Agreement, the
Successor Manager releases any and all claims and causes of action, both known and unknown,
against me, in my personal capacity and capacity as the Chapter 7 Trustee, my attorneys, agents,
and professionals, and the Debtor's estate relating to the Transfers, Claim No. 23 and any potential
indemnification claims, and my administration of the Debtor's estate.

20.  I believe that the settlement and Agreement were negotiated in good faith. Both I
and the Successor Manager are represented by counsel, and I am informed and believe that the
negotiations were at arms-length.

21.  I believe that the proposed settlement is fair and equitable and is in the best interests
of the estate and the creditors. The prospects of avoiding and recovering the Transfers, and
disallowing the security for Claim No. 23, are uncertain. The settlement resolves the disputes
regarding Claim No. 23, the Transfers, and the Successor Manager's services as the Debtor's
manager and avoids the concomitant expenses, delay, and litigation to resolve the disputes. The
litigation to resolve the disputes would likely be costly and time-consuming, and the estate would
be required to bear the expenses of such litigation. In addition, the settlement results in the payment
of $100,000 to the estate and the withdrawal of Claim No. 23. Also, the withdrawal of Claim No.
23 will enable me to proceed toward closing this case, and the holders of allowed unsecured claims

///

///

///

///

///

1   to receive distributions, rather than having to wait until the Superior Court litigation involving the

2   Successor Manager is resolved.

3         I declare under penalty of perjury that the foregoing is true and correct.

4   Executed on January 1st, 2023 at San Pedro, California.

5

6                                                HEIDE KURTZ

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# REQUEST FOR JUDICIAL NOTICE

1

## **REQUEST FOR JUDICIAL NOTICE**

2    Heide Kurtz, the Chapter 7 Trustee of the estate of Assisted Living America V, LLC,

3  requests pursuant to Fed.R.Evid. 201 that the Court take judicial notice of the following pleadings

4  and documents:

5    A. *In re Assisted Living America V, LLC*, Case No. 2:22-bk-11051-VZ, United States

6      Bankruptcy Court for the Central District of California, Los Angeles Division

| Docket No. | Filing Date | Pleading |
|---|---|---|
| | | Docket |
| | 7/11/22 | Claim No. 23 of 1022 S. La Cienega Manager, LLC |
| 1 | 2/25/22 | Voluntary Petition |
| 9 | 3/11/22 | Schedules and Statement of Financial Affairs |

13    B. *1022 S. La Cienega Manager, LLC, v. Aida Renta-Caliib, et al.*, Case No.

14      21STCV30834, Los Angeles County Superior Court

| Filing Date | Pleading | Exhibit |
|---|---|---|
| 1/7/22 | Cross-Complaint<br>1.  Breach of Contract<br>2.  Accounting<br>3.  Money Had and Received<br>4.  Negligence<br>5.  Negligent Misrepresentation<br>6.  Concealment<br>7.  Unjust Enrichment | "3" |

22    C. *Isaacson v. 1022 S. La Cienega Manager, LLC, et al.*, Case No. 22STCV06684, Los

23      Angeles County Superior Court

| Filing Date | Pleading | Exhibit |
|---|---|---|
| 2/23/22 | Complaint for:<br>1. Breach of Fiduciary Duty<br>2. Breach of Covenant of Good Faith and Fair Dealing | "4" |

18

1    D. *Isaacson v. 1022 S. La Cienega Manager, LLC, et al.*, Case No. 22STCV06896, Los

2        Angeles County Superior Court

3        Filing Date    Pleading                                                        Exhibit

4        2/23/22        Complaint for:                                                    "5"
                        1. Breach of Contract
5                       2. Negligence
                        3. Negligent Misrepresentation
6                       4. Intentional Concealment

7

8    Dated: January 3, 2023                    ROBERT A. HESSLING, APC

9

10                                      By:  ROBERT A. HESSLING
                                             General Counsel for Heide Kurtz,
11                                           Chapter 7 Trustee

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made by and between Heide Kurtz, the Chapter 7 Trustee ("Trustee") of the estate of Assisted Living America V, LLC ("Debtor") in *In re Assisted Living America V, LLC*, Bk. No. 2:22-bk-11051-VZ in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, and 1022 S. La Cienega Manager, LLC ("Successor Manager"), by and through its Manager, Stapleton Group, with respect to the following recitals of fact:

### RECITALS

A.      Between 2004 and 2007, Beverly Hills Adjacent Senior Assisted Living, LLC ("BHASAL"), and SRC/SCH, LLC ("SRC/SCH"), which were California limited liability corporations, purchased over 52,000 square feet of land commonly described as 1022 to 1026, 1032, and 1042 to 1054 South La Cienega Blvd., Los Angeles, California ("Property"). These companies obtained zoning entitlements and approvals from the City of Los Angeles to construct a five-story assisted living facility on the Property.

B.      In March 2013, BHASAL and SRC/SCH merged, and the Debtor became the successor as a result of the merger. By a grant deed recorded on July 22, 2013, the Debtor, as the successor by the merger, conveyed the right, title and interest in the Property to the Debtor.

C.      The Debtor's initial manager Charles Weber resigned on August 6, 2013.  In or about mid-2014, D.I.D.M. Development Corporation ("D.I.D.M.") became the successor manager of the Debtor.

D.      In or about November 2020, the Successor Manager replaced D.I.D.M. as the Debtor's manager. The terms of the Successor Manager's retention are set forth in a letter agreement dated November 23, 2020. The letter agreement provides, among other things, that the Debtor will indemnify the Successor Manager and others from any and all claims, liabilities, losses, damages, debts, judgments, and/or expenses and actions in respect thereof related to or arising out of or in connection with Successor Manager's services under the agreement.

1

20

E.      In or about November 2020, the Successor Manager opened two bank accounts at City National Bank – Account No. ████ 4132 for the Debtor ("Debtor Account) and Account No. ████ 0356 for the Successor Manager ("Successor Manager Account").

F.      In mid-July 2021, the Property was sold, and proceeds of $2,055,291.36 were received and were deposited into the Successor Manager Account in connection with the closing of the sale of the Property.

G.      On August 13, 2021, the Successor Manager paid $1,250,290.36 of the proceeds to the Debtor, which deposited the funds in the Debtor Account.

H.      The Successor Manager paid the following amounts to the following business entities on the following dates from the Successor Manager Account:

| Date | Business Entity | Payment |
|---|---|---|
| 11/13/21 | Greenberg Traurig, LLP | $70,540.70 |
| 1/18/22 | Successor Manager | $77,202.92 |
| 1/20/22 | Greenberg Traurig, LLP | $35,954.40 |

I.      On February 24, 2022, the Debtor paid the sum of $181,852.46 to the Successor Manager. On the same day, the Debtor deposited the sum of $100,000 into the Successor Manager Account ("$100,000 Deposit"). The Debtor's Schedule "A/B" indicates that it was a "Deposit paid to 1022 S. La Cienega Manager, LLC in connection with potential indemnification claims of 1022 S. La Cienega Manager, LLC and its affiliates."

J.      On February 25, 2022, the Debtor filed a voluntary Chapter 7 petition. Heide Kurtz was appointed as the Chapter 7 Trustee.

K.      The Trustee contends, among other things, that: (1) the $100,000 Deposit is avoidable and recoverable as a preferential transfer under 11 U.S.C. U.S.C. § 547(b); and (2) the $181,853.24 payment is avoidable and recoverable as a preferential transfer under section 547(b). The $100,000 Deposit and the payment of $181,853.24 are hereinafter collectively referred to as the "Transfers."

L.     The Successor Manager disputes the Trustee's contentions and contends, among other things, that the Transfers were used to satisfy professional fees and expenses listed in ¶ H above that the Debtor incurred months prior to bankruptcy filing and were paid in the ordinary course of business and are not avoidable and recoverable under the Bankruptcy Code and California law.

M.     On July 11, 2022, the Successor Manager filed a proof of secured claim, being Claim No. 23, in an unknown amount ("Claim No. 23") based on potential indemnification claims of the Successor Manager against the Debtor's estate.

N.     The Successor Manager contends, among other things, that Claim No. 23 is secured by the $100,000 Deposit and that the Successor Manager is entitled to a setoff. The Trustee disputes the Successor Manager's contentions and Claim No. 23 and contends, among other things, that the Successor Manager is not entitled to any setoff and that Claim No. 23 should not be allowed as a secured claim because the $100,000 Deposit is avoidable and recoverable as a preferential transfer.

O.     It is the intentions of the Trustee and the Successor Manager to settle all claims and causes of action relating to the Transfers, Claim No. 23 and any potential indemnification claims, the Successor Manager's services as the Debtor's manager, and the Trustee's administration of the estate.

The parties agree as follows:

1.     <u>Incorporation of Recitals</u>

The above recitals are incorporated herein and made a part of this Agreement.

2.     <u>Payment</u>

Within 10 days after the entry of a final order approving this settlement, the Successor Manager shall pay the sum of $100,000 to the Trustee.

22

3.   Withdrawal of Claim No. 23

Within 10 days after the entry of a final order approving this settlement, the Successor

Manager shall withdraw its Claim No. 23 by causing the Withdrawal of Claim No. 23 in the

form of the attached Exhibit "1" to be filed in the Debtor's case.

4.   Bankruptcy Court Approval

The Trustee will seek a court order under Fed.R.Bankr.P. 9019, Local Bankruptcy Rules

9013-1 and 9019-1, and any other applicable rule, approving the compromise and settlement in

this Agreement. This Agreement is effective only upon the entry of a final order approving the

compromise and settlement in this Agreement, following the expiration of 14 days without any

appeal or other challenge to the order, or final judgment following any appeal or other challenge.

If the Bankruptcy Court does not approve this Agreement, this Agreement has no force or effect,

and the parties may pursue their respective rights and claims.

5.   Limited Tolling of Statute of Limitations Periods and Limited Waiver of Statute
     of Limitations Defenses

In the event that the Bankruptcy Court approves the settlement but the settlement order is

appealed: (a) the statute of limitations under 11 U.S.C. § 546(a) regarding the actions stated

therein shall be tolled during the period of any appeal; and (b) the Successor Manager waives the

defense of any statute of limitations under section 546(a) regarding such actions for those tolled

periods.

6.   Releases

6.1   Except with respect to the rights and obligations under this Agreement,

including without limitation the $100,000 payment and the withdrawal of Claim No. 23, the

Trustee, on behalf of the Debtor's estate, releases any and all claims and causes of action, both

known and unknown, against the Successor Manager, its manager Stapleton Group, officers,

members, attorneys, agents, and employees relating to the Transfers, Claim No. 23 and any

potential indemnification claims, and the Successor Manager's services as the Debtor's manager.

4

23

6.2     Except with respect to the rights and obligations under this Agreement, the Successor Manager releases any and all claims and causes of action, both known and unknown,, against the Trustee, in her personal capacity and capacity as the Chapter 7 Trustee, her attorneys, agents, and professionals, and the Debtor's estate relating to the Transfers, Claim No. 23 and any potential indemnification claims, and the Trustee's administration of the Debtor's estate.

7.     Effect of Releases

Except with respect to the rights and obligations under this Agreement, including without limitation the $100,000 payment and the withdrawal of Claim No. 23, this settlement is a full settlement of any and all claims and causes of action, both known and unknown, of the Trustee against the Successor Manager, its manager Stapleton Group, officers, members, attorneys, agents, and employees, and of the Successor Manager against the Trustee, in her personal capacity and capacity as the Chapter 7 Trustee, her attorneys, agents, and professionals, and the Debtor's estate, relating to the Transfers, Claim No. 23 and any potential indemnification claims, the Successor Manager's services as the Debtor's Manager, and the Trustee's administration of the Debtor's estate, notwithstanding California Civil Code § 1542 which provides that:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

8.     Miscellaneous

8.1     This Agreement is a result of a compromise and is not an admission of liability or responsibility on the part of any of the parties, who deny such liability and disclaim such responsibility.

8.2     The parties declare and represent that no promise not herein expressed has been made to them, and that this Agreement contains the entire agreement between the parties.

5

24

8.3     The parties will execute all further and additional documents that are reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

8.4     This Agreement is deemed to have been executed and delivered within the State of California, and the rights and obligations of the parties are to be construed and enforced in accordance with and governed by the laws of the State of California, except where federal bankruptcy laws apply.

8.5     This Agreement is the entire agreement between the parties with respect to the subject matter of this Agreement. This Agreement supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an agreement in writing.

8.6     This Agreement is not a release of any of the obligations imposed under this Agreement.

8.7     In the event of any litigation or arbitration relating to this Agreement, the prevailing party is entitled to reasonable attorneys' fees and costs.

8.8     The parties will pay their respective legal fees and other expenses relating to this dispute.

8.9     The Bankruptcy Court shall have and retain exclusive jurisdiction to interpret and enforce, and resolve any dispute regarding, this Agreement.

8.10     Each party has read this Agreement. The parties fully understand the significance of all of the terms of this Agreement and have signed this Agreement voluntarily. The parties understand that they may seek the advice and opinions of independent counsel as to the significance and effect of the terms of this Agreement.

25

8.11    This Agreement may be executed in counterparts.  When each party has signed and delivered at least one such counterpart, each counterpart will be deemed an original and, when taken together with other signed counterparts, constitutes one Agreement, which is binding upon and effective as to all parties.

JAN 0 1 2023

Dated: ~~December___, 2022~~

_____
HEIDE KURTZ
Chapter 7 Trustee

Dated: December 20, 2022

1022 S. LA CIENEGA MANAGER, LLC

By: _____
DAVID P. STAPLETON
Chief Executive Officer of Stapleton Group,
Manager of 1022 S. La Cienega Manager, LLC

7

26

APPROVED AS TO FORM:
Jany 2, 2023 rws
Dated: ~~December __, 2022~~

ROBERT A. HESSLING, APC

By: _____

ROBERT A. HESSLING
General Counsel for Heide Kurtz,
Chapter 7 Trustee

Dated: December 30, 2022

GREENBERG TRAURIG, LLP

By: _____

LISA M. PETROVSKY
Attorneys for 1022 S. La Cienega Manager,
LLC

8

# EXHIBIT 1

28

1    LISA M. PETROVSKY
      GREENBERG TRAURIG, LLP
2    1840 Century Park East, Suite 1900
      Los Angeles, CA 90067-2121
3    Telephone: (310) 586-7843
      Facsimile: (310) 586-7800
4    *petrovskyl@gtlaw.com*

5    Attorneys for Creditor,
      1022 S. La Cienega Manager, LLC
6

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                      **LOS ANGELES DIVISION**

| | |
|---|---|
| 11   In re | )   Case No. 2:22-bk-11051-VZ |
| 12   ASSISTED LIVING AMERICA V, LLC, | ) <br> )   Chapter 7 |
| 13 | ) <br> )   **WITHDRAWAL OF CLAIM NO. 23 OF** |
| | )   **1022 S. LA CIENEGA MANAGER, LLC** |
| 14           Debtor. | ) <br> )   [No Hearing Required] |
| 15 | ) |
| 16 | ) |

17        Creditor 1022 S. La Cienega Manager, LLC, by and through its undersigned counsel,

18 withdraws its proof of secured claim, being Claim No. 23, in an unknown amount filed on July 11,

19 2022.

20 Dated: January __, 2023           GREENBERG TRAURIG, LLP

21

22                      By: _____

23                           LISA M. PETROVSKY
                           Attorneys for 1022 S. La Cienega Manager,

24                            LLC

25

26

27

28                                                       29

                                                             **9**

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is
Greenberg Traurig, LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA 90067-2121.

A true and correct copy of the foregoing document entitled (*specify*): **WITHDRAWAL OF CLAIM NO. 23 OF 1022 S.
LA CIENEGA MANAGER, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner
required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On
January    , 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

> **Debtor's Counsel**  Ron Bender    rb@lnbyb.com
> Matthew L Eanet    matt@eanetpc.com, sara@eanetpc.com
> **Trustee's Counsel**  Robert A Hessling    rhessling@gmail.com
> **Trustee**  Heide Kurtz (TR)    trustee@hkurtzco.com, C169@ecfcbis.com
> Krikor J Meshefejian    kjm@lnbyg.com
> Richard B Sheldon    rbs@msk.com, mec@msk.com
> Peter T Steinberg    mr.aloha@sbcglobal.net
> United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**: On January    , 2023, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a
sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge
here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is
filed.

> Debtor
> Assisted Living America V, LLC
> 515 S. Flower Street
> 18th Floor
> Los Angeles, CA 90071-2201

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state
method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2023, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing
to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a
declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the
document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January    , 2023 | Lisa M. Petrovsky | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**10**
30

*June 2012* **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT 2



**This page is part of your document - DO NOT DISCARD**



# 20131071082



**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/22/13 AT 08:00AM**

Pages:
0003

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 22.00 |



**L E A D S H E E T**



201307220270013

**00008041577**



005014018

**SEQ:**
**01**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t50

31

2

**RECORDING REQUESTED BY**
Ticor Title Company of California
AND WHEN RECORDED MAIL TO:

Assisted Living America V, LLC
1032 S La Cienega Blvd
LA CA 90035

07/22/2013
*20131071082*

ORDER NO.:          ESCROW
NO.: 00178652-001-NW

---

Parcel No. **5087-001-021**                    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)          Documentary Transfer Tax is $  0.00
☐ unincorporated area                          X  computed on full value of interest or property conveyed, or
X  the City of Los Angeles                      ☐  full value less value of liens or encumbrances remaining at the
                                                    time of sale
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**ASSISTED LIVING AMERICA V, LLC, a California Limited Liability Company successor by merger to BEVERLY HILLS
ADJACENT SENIOR AND ASSISTED LIVING, LLC AND SRC/SCH, LLC a California Limited Liability Company**
hereby GRANT(s) to
**ASSISTED LIVING AMERICA V, LLC, a California Limited Liability Company**
the following real property in the City of Los Angeles County of Los Angeles, State of California:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Dated: July 12, 2013
※ This conveyance changes the manner in which
Title is held, grantor(s) and grantee(s)
Remain the same and continue to hold the same
Proportionate interest, R&T 11911            Charles L. Weber, Manager of Beverly Hills Adjacent Senior
                                             and Assisted Living LLC

Charles L. Weber, Manager of Assisted Living America V,      Charles L. Weber, Manager of SRC/SCH, LLC
LLC

THE  GRANTORS  AND  THE  GRANTEES  IN  THIS
CONVEYANCE ARE COMPRISED OF THE SAME PARTIES
WHO CONTINUED TO HOLD THE SAME PROPORTIONATE
INTEREST IN THE PROPERTY, R&T 11923(d).

STATE OF CALIFORNIA
COUNTY OF Los Angeles        } ss:

On 7-17-13 _____ before me, Marianne Frost _____
a Notary Public, personally appeared Charles L. Weber
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature Marianne Frost

MARIANNE FROST
Commission # 1986691
Notary Public - California
Los Angeles County
My Comm. Expires Jul 29, 2016

## MAIL TAX STATEMENTS AS DIRECTED ABOVE
Page 1

GDGNERIC

1 D
32

Escrow No.: 00178652 - 001 - Nicole Walker

*3*

## EXHIBIT "A"

PARCEL 1:

LOT 119 OF TRACT NO. 7170, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 76, PAGE(S) 12 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT 120 OF TRACT NO. 7170, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 76, PAGE(S) 12 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, ALL OTHER HYDROCARBON SUBSTANCES BY WHATSOEVER NAME KNOWN, AND ALL WATER, CLAIMS OR RIGHTS TO WATER, TOGETHER WITH APPURTENANT RIGHTS THERETO, WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING ABOVE, AS EXCEPTED OR RESERVED BY DEED.

PARCEL 3:

LOT 121 OF TRACT NO. 7170, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 76, PAGE(S) 12 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

LOT 122 OF TRACT NO. 7170, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 76, PAGE(S) 12 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

PARCEL 5:

LOTS 233 AND 234 OF TRACT NO. 7171, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 77, PAGE(S) 19 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**For APN/Parcel ID(s):** 5087-001-021, 5087-001-023, 5087-001-022, 5087-001-024

GRANTDEE

33